JOHN A. GAFFEY *vs.* UNITED SHOE MACHINERY COMPANY.

Middlesex.    November 17, 18, 1908. — May 20, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Contract,* Construction, Performance and breach.    *Damages.*

In an action for the alleged breach of a contract in writing, by which the plaintiff agreed to excavate rock from and remove a certain ledge on the land of the defendant, a corporation which then was putting up some new buildings, to crush the rock to certain specified sizes and deliver the crushed rock as therein specified, it appeared that the defendant undertook to terminate the contract as soon as the buildings were completed but before the whole of the ledge was removed, and prevented further performance on the part of the plaintiff, contending that under the contract the plaintiff was to crush only so much of the ledge as should be needed in the construction of the new buildings and that it had a right to terminate the contract as it did. The contract, among other things, contained the following: "That whereas the owner desires to secure the removal of a certain ledge . . . of rock situated upon its premises . . . and whereas the contractor desires to undertake and carry on such work of removal . . . Now, therefore, . . . One. The contractor undertakes and agrees, subject to the provisions hereof and to the directions of the engineer in charge, to excavate and remove the ledge . . . Five. The owner shall furnish at convenient central points about the ledge . . . the necessary power . . . Six. . . . the contractor shall thoroughly wash and cleanse the ledge before the same is blasted or excavated . . . The owner is thoroughly to strip the earth and soil from the ledge as rapidly as is required." It further was provided that the "excavation and removal shall be to grade thirteen or such other grade as may be specifically designated by the said engineer," and a provision was made for "changing the grade to which the ledge or any portion thereof shall be levelled." It further was provided that "The contractor shall use the chips and loose stones not crushed in filling up hollows in the ledge caused by the work of excavation, to the end that upon the completion of the work the ledge shall be substantially at the grade or grades designated." The only reference in the contract to buildings in process of construction was a provision that if work upon the build-

ing was suspended by strikes the engineer might order the prosecution of work under the contract suspended. *Held*, that the contract was one for the removal of the entire ledge, and that the defendant had no right to terminate the contract upon the completion of its buildings.

In an action for the alleged breach of a contract in writing, by which the plaintiff agreed to excavate rock from and remove a certain ledge on the land of the defendant, the contract contained a provision that the "excavation and removal shall be to grade thirteen or such other grade as may be specifically designated" by the defendant's engineer. There was a further provision that "The engineer in charge may at any time during the progress of the work give written notice to the contractor, as hereinbefore provided, changing the grade to which the ledge or any portion thereof shall be levelled, and the grade so designated shall be in substitution of the grade thirteen mentioned in this instrument." The defendant's engineer gave to the plaintiff a notice, purporting to be under this clause, that thereafter the grades would be eighteen and twenty-three instead of thirteen. The plaintiff refused to acquiesce in this change on the ground that it was not warranted by the contract, and thereupon the defendant virtually put a stop to the work and prevented the plaintiff from completing it. An auditor to whom the case was referred found that the effect of the change of the grade from thirteen to eighteen and twenty-three was that only a small amount would be excavated from the top of the ledge, and that the change was made by direction of an officer of the defendant for the purpose of terminating the plaintiff's work. At the trial the defendant's engineer testified on cross-examination that "he did not know of any purpose to which the tops of the ledges levelled off to grade twenty-three and grade eighteen could be put" and that his object in changing the grade was to stop the plaintiff from working further. The presiding judge instructed the jury that "The engineer under the terms of the contract . . . was authorized to make any change of grade incidental to the purpose of carrying out the provisions of the contract, — that is, for the purpose of taking away the ledge, — but he had no authority . . . to change the grade to an impracticable grade for the purpose, and simply for the purpose, of terminating the contract." On exceptions alleged by the defendant after a verdict for the plaintiff, it was *held*, that the instruction of the judge was correct; that, by the only reasonable construction of the provision of the contract, the defendant's power to change the grade did not include the power to change it so as to abrogate the contract, but gave the defendant authority to make only such reasonable changes as would render the removal of the ledge when completed more satisfactory to it.

In an action, by a contractor against a corporation, for a breach of a contract in writing, by which the plaintiff agreed to excavate rock from and remove a certain ledge on the land of the defendant, to crush the rock to certain specified sizes and deliver the crushed rock as therein specified, where it appeared that the defendant, under an erroneous construction of the contract, wrongfully undertook to terminate it before the whole of the ledge was removed and prevented further performance on the part of the plaintiff, the plaintiff, upon the question of damages, showed that he had made a sub-contract for a stone crusher with an engine and an engineer to run it, a boiler, cars and other equipment required to crush the stone into the sizes called for by his contract with the defendant, and, subject to the defendant's objection and exception, was allowed to put in evidence the price which he was required by the sub-contract to pay for what was furnished. The judge properly instructed the jury that the plaintiff was entitled to recover as damages, if he prevailed, the difference, if any,

between what it would have cost him to complete the work according to the contract and the sum which he was to receive therefor. *Held*, that the case of *Smith* v. *Flanders*, 129 Mass. 322, seemed to be decisive in favor of the admissibility of the evidence, but that, even if the evidence was admitted wrongly, the defendant could not have been harmed by its admission, as the cost of completing the work would not be enhanced by the existence of the sub-contract and might be diminished by it.

MORTON, J. This is an action of contract to recover damages for the breach by the defendant of a written contract between it and the plaintiff according to which as the plaintiff contends he was to excavate rock from and remove a ledge on the defendant's premises in Beverly, crush the rock to certain specified sizes, and deliver the crushed rock as provided in the contract. The breach complained of was the defendant's action in refusing to allow the plaintiff to go on with the contract, he being ready and willing to do so. There was a verdict for the plaintiff and the case is here on the defendant's exceptions.

The first question relates to the construction of the contract. The defendant contends that according to the true construction of the contract the plaintiff was only to excavate and crush so much of the ledge as should be needed in the construction of new buildings and that when the buildings were completed it had a right to terminate the contract as it did. It also contends that the changes of grade ordered by the defendant's engineer came within the terms of the contract and did not constitute a breach of it. The plaintiff contends, on the other hand, that the contract is for the removal of the entire ledge, and not merely for so much as would have to be removed to furnish the crushed stone required for the construction of certain buildings. He also contends that the change of grade ordered by the defendant's engineer was not warranted by the contract.

It is plain we think that the construction contended for by the plaintiff, and which was the one adopted by the presiding judge,* is the correct one. The contract begins by reciting, "That whereas the owner desires to secure the removal of a certain ledge . . . situated upon its premises at Beverly . . ., and whereas the contractor desires to undertake and carry out such work of removal . . .," and then proceeds " Now, therefore,

---

* *Stevens*, J.

. . . One.  The contractor undertakes and agrees, subject to the provisions hereof and to the directions of the engineer in charge, to excavate and remove the ledge . . ." etc.  The reference here is to the ledge and its removal as a whole and there are corresponding references in other provisions of the contract.  Thus in article " Five " it is provided that " The owner shall furnish at convenient central points about the ledge . . . the necessary power," etc.  In article " Six " it is provided that " The contractor shall thoroughly wash and cleanse the ledge before the same is blasted or excavated," etc., and that " The owner is thoroughly to strip the earth and soil from the ledge as rapidly as is required," etc.  In article " One " it is provided that the " excavation and removal [referring evidently to the excavation and removal of the entire ledge] shall be to grade thirteen (13) or such other grade as may be specifically designated by the said engineer," and in article " Ten " provision is made for " changing the grade to which the ledge or any portion thereof shall be levelled."  In article " Fourteen " it is further provided that, " The contractor shall use the chips and loose stones not crushed in filling up hollows in the ledge caused by the work of excavation, to the end that upon completion of the work the ledge shall be substantially at the grade or grades designated."  All of these various provisions contemplate, we think, the removal of the entire ledge and not of such portion as may be required to furnish the crushed stone for buildings in the process of construction.

The only reference to buildings in process of construction in the entire contract is in article " Ten," and the reference there is simply for the purpose of providing that if work upon the buildings is suspended by strikes the engineer may order the prosecution of work under the contract to be suspended also.  There is nowhere in the contract any provision that the ledge shall be removed only so far as may be necessary to furnish material for the construction of the buildings which the defendant was erecting, and there is no provision that upon completion of such buildings the contract shall or may be terminated.  The auditor found that the main purpose of the defendant in having the ledge excavated was to obtain material for new buildings, and that no clause was inserted in the contract limiting the amount to be excavated because the defendant supposed that approxi-

mately the whole ledge would be required to supply the stone needed for the buildings. But he also found that the defendant was desirous to have the ledge removed and the portion of its premises occupied by it brought down to a level grade suitable to be grassed over or used for additional buildings or railroad tracks and that that was one of its purposes in having the ledge excavated and removed. There was therefore nothing in the circumstances under which the contract was entered into which required or warranted a different construction from that given to the contract by the presiding judge.

The contract provided in article " One," as already observed, " that the excavation and removal shall be to grade thirteen (13) or such other grade as may be specifically designated by the said engineer " ; and it further provided in article " Ten " that " The engineer in charge may at any time during the progress of the work give written notice to the contractor, as hereinbefore provided, changing the grade to which the ledge or any portion thereof shall be levelled, and the grade so designated shall be in substitution of the grade thirteen (13) mentioned in this instrument." The defendant, assuming to act under these provisions in the contract, gave notice to the plaintiff on April 2, 1907, that thereafter the grades would be eighteen and twenty-three instead of thirteen, and on the plaintiff's refusal to acquiesce in the change as warranted by the contract virtually put a stop to work under the contract, and prevented the plaintiff from performing the contract. The auditor found that the effect of the change from grade thirteen to grades eighteen and twenty-three was that only a small amount would be excavated from the top of the ledge and that the change was made by direction of an officer of the defendant corporation for the purpose of terminating the plaintiff's work under the contract. At the trial the defendant's engineer testified on cross-examination, amongst other things, that " he did not know of any purpose to which the tops of the ledges levelled off to grade twenty-three and grade eighteen could be put," and that his object in changing the grade was to stop the plaintiff from further working. The presiding judge instructed the jury that " The engineer under the terms of the contract . . . was authorized to make any change of grade incidental to the purpose of carrying out the provisions of the

contract, — that is, for the purpose of taking away the ledge, — but he had no authority . . . to change the grade to an impracticable grade for the purpose, and simply for the purpose, of terminating the contract." We think that these instructions were correct. The power to change the grade did not include the power to change it so as to abrogate the contract, but was intended to give the defendant authority to make such reasonable changes during the progress of the work as would render the removal of the ledge when completed more satisfactory to it. So construed the provision is a reasonable one. Construed as the defendant contends it should be it would be altogether unreasonable, and cannot be presumed to have been within the contemplation of the parties.

The plaintiff made a sub-contract for a stone crusher with an engine and an engineer to run it, boiler, cars and other equipment required to crush the stone into the sizes called for by his contract with the defendant, and, subject to the defendant's objection and exception, was allowed to put in, as bearing on the question of damages the price which he was required to pay for what was thus furnished.

The plaintiff was entitled to recover as damages, if he prevailed, the difference, if any, between what it would have cost him to complete the work according to the contract and the sum which he was to receive therefor, and the judge so instructed the jury in accordance with the defendant's request. *Fox* v. *Harding*, 7 Cush. 516. *Smith* v. *Flanders*, 129 Mass. 322. *Magnolia Metal Co.* v. *Gale*, 189 Mass. 124. The case of *Smith* v. *Flanders*, 129 Mass. 322, would seem to be decisive in favor of the admissibility of the evidence.

But we fail to see how the defendant could have been harmed even if the evidence was wrongly admitted. The measure of damages was, as already observed, the difference between the contract price and the cost of completing the work, and the jury were so instructed, and the instruction was repeated more than once. Whether in estimating the profits which the plaintiff would have made if he had been allowed to complete the contract the jury included as part of it the profits which the sub-contractor would be entitled to recover by way of damages from the plaintiff for breach of the sub-contract, or whether in estimating the

profits they disregarded the sub-contract and estimated them as an entirety, was immaterial. The cost of completing the work and the profits or damages to which the plaintiff was entitled would be the same in either case. The damages were not and could not have been enhanced by anything that was said or done in regard to the sub-contract. If the admission of the sub-contract had any effect it would seem to have helped rather than to have harmed the defendant.

We see no error in the rulings and instructions or the refusals to rule and instruct of the presiding judge.

*Exceptions overruled.*

*W. B. Farr*, (*N. B. Todd* with him,) for the defendant.
*E. A. Whitman & H. W. Barnum*, for the plaintiff.