SAMUEL DUBINSKY *vs.* WELLS BROTHERS COMPANY OF NEW YORK.

Suffolk. March 26, 1914. — June 16, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Contract,* Construction, Performance and breach. *Equity Jurisdiction,* Damages. *Damages,* In equity, Nominal, Liquidated.

A general contractor, who had agreed with a landowner to erect a new building after demolishing an old building that was on the site, made a contract with a subcontractor by which he sold the materials of the old building to the sub-

contractor who agreed to remove them and clear the land by a day named. The subcontract provided that, upon the failure of the subcontractor "to prosecute the work satisfactorily to the architects and" the general contractor, the old building and its materials should revert to the general contractor. Repeated complaints were made by the architects and the general contractor of the manner in which the subcontractor was performing his work of demolition and removal, which resulted in the general contractor taking possession of the premises and completing the work. In a suit in equity brought by the subcontractor against the general contractor to enjoin him from demolishing the old building and removing the materials and for damages, it was found by a master that if the plaintiff had not been ejected he could have completed his work by the day named, but that this could not have been known when he was ejected by the defendant and that the repeated complaints of the architects and the defendant were made in good faith. *Held,* that by the terms of the contract it was within the power of the defendant to direct the manner of the performance of the plaintiff's work and that it was the plaintiff's duty to conform to the defendant's directions so long as the defendant acted reasonably and in good faith under an honest sense of dissatisfaction.

Where a general contractor, who has a contract with a landowner for the erection of a building after removing the old building then on the site, sells the materials of the old building to a subcontractor, who agrees to demolish the old building and remove the materials by a day named, and also deposits with the general contractor a certain sum of money, "which amount is to be forfeited in case the other conditions of the contract are not satisfactorily carried out" by the subcontractor, and afterwards the subcontractor commits a breach of the contract which inflicts no substantial damage upon the general contractor and gives him a right only to nominal damages, the deposit of money is to be treated as intended by the parties merely to secure the performance of the contract and not as liquidated damages; and, on the subcontract being terminated, the subcontractor is entitled to have the amount of the deposit returned to him after the deduction of the amount allowed as nominal damages, which in this case was $5.

BILL IN EQUITY, filed in the Superior Court on November 10, 1911, to enjoin the defendant from demolishing the old Filene Building on the corner of Washington Street and Summer Street in Boston, which the plaintiff had agreed with the defendant to demolish and remove under an agreement in writing dated September 25, 1911, and modified by an agreement of November 1, 1911, praying also for damages.

The case was referred to Robert Cushman, Esquire, as master, who made the findings that are stated in the opinion. Upon a motion of the plaintiff to confirm the master's report, the defendant's exceptions to the report being waived, *Jenney,* J., made an interlocutory decree recommitting the case to the master "to find and report to the court such facts as may be

relevant to the question of the right of the defendant to retain in whole or in part the sum of $1,500 paid to it by the plaintiff under a contract between the parties dated August 25, 1911, and referred to in the report of said master now on file, so that the facts may be before the court in case it is determined that the defendant did not commit any breach of said contract." The master made a supplemental report, containing the findings on this subject which are stated in the opinion, and the defendant filed exceptions. Upon the argument of these exceptions *Jenney*, J., made an interlocutory decree overruling the defendant's exceptions to the supplemental report and ordering that both the original and the supplemental reports be confirmed, except as to rulings of law made by the master, which were left open for consideration upon the entry of the final decree. Two days later by order of the same judge a final decree was entered, ordering "that the amount deposited under the contract between the parties was a deposit in the nature of a penalty, and that the defendant has not sustained any damage other than nominal damage to the amount of five dollars ($5) through the plaintiff's failure to complete said contract, and accordingly that the defendant be and it hereby is ordered to pay to the plaintiff the sum of one thousand four hundred and ninety-five dollars ($1,495) with interest on said amount from November 10, 1911, to this date," and that, "except as hereinbefore provided, it is ordered, adjudged and decreed that the plaintiff is not entitled to any relief in this case." Both the plaintiff and the defendant appealed from this decree.

The case was submitted on briefs.

*D. A. Ellis & P. Rubenstein,* for the plaintiff.

*H. N. Berry & C. C. Bucknam,* for the defendant.

CROSBY, J. The defendant in this suit in equity was the general contractor for the erection of the Filene Building in Boston, its contract including the demolition and removal of the old buildings on the site of the new one. The case was referred to a master, who found that by the terms of the contract with the owners it was provided that if the architect was dissatisfied with the manner in which the work was being performed by the defendant, he (the architect) "could take away the contract from Wells Brothers on three days' notice, and place it elsewhere."

The defendant entered into a contract with the plaintiff, by the terms of which the defendant sold and conveyed the materials in the old buildings to the plaintiff, the latter agreeing to remove them, together with all rubbish, within twenty-five week days from October 3, 1911, which time for the completion of the work was by a supplemental agreement extended to November 23, 1911. The agreement provided that upon the failure of the plaintiff "to prosecute the work satisfactorily to the architects and the party of the first part" (the defendant), the buildings and material therein should revert to the defendant.

The plaintiff entered upon the work, and after repeated complaints made to him by the defendant and by the architects between November 1 and November 9, the defendant on November 7 wrote to the plaintiff that it (the defendant) had received notice that the work was not proceeding satisfactorily according to the contract and that, if the accumulation of rubbish and debris was not removed from the premises within forty-eight hours, the defendant would take possession of the property, finish the plaintiff's contract and charge him with the expense thereof. On November 9 the defendant by letter notified the plaintiff that in accordance with its letter of the seventh "we are herewith taking possession of the buildings on Washington, Summer and Hawley Streets, on the site of the new Filene Building." The letter also requested the plaintiff to remove his employees and vacate the premises forthwith.

The master filed a report and a supplemental report, both of which were confirmed; a final decree was entered and both plaintiff and defendant have appealed from this decree.

It is apparent from the nature of the work to be performed by the plaintiff that it was of great importance to the defendant as the general contractor that the demolition of the old buildings and the removal of the materials should proceed without delay and be completed within the time limited by the contract. The master finds that both the defendant and the architect were dissatisfied with the manner in which the plaintiff was carrying on the work; that it was not being prosecuted expeditiously; that the plaintiff permitted a substantial quantity of materials and rubbish to accumulate on the premises; that the plaintiff's method of wrecking the building was not the most efficient or proper

method of doing the work; that the plaintiff refused to change the location of a derrick which interfered with the prosecution of the work by the defendant; that dust was raised on the premises by reason of insufficient watering and was the subject of complaint by the police department; and that too many teams were allowed to stand on the streets adjoining the premises. These and many other matters were the subject of complaints made by the defendant and the architect to the plaintiff, which finally resulted in the defendant's taking possession of the premises and completing the work. The master finds that if the plaintiff had not been ejected, he could have completed his contract by November 23. He further finds that whether the plaintiff would have done so could not possibly have been known as early as November 9, 1911. The master also finds that the complaints made by the architect and by the defendant to the plaintiff were made repeatedly and were made in good faith.

The plaintiff contends that the defendant was not justified in terminating the contract and taking possession of the premises, and that therefore the materials did not revert to the defendant. The determination of this question depends upon the extent of the authority of the defendant under the contract.

We are of opinion that in view of the terms of the contract it was within the power of the defendant not only to determine whether the work was being performed in accordance with the contract, but that it might direct the manner of such performance. If it was dissatisfied with the progress of the work or with the way in which it was being carried on, it was the duty of the plaintiff upon notice from the defendant to conform to the latter's orders in directing the work; and so long as the defendant acted reasonably and in good faith under an honest sense of dissatisfaction, the plaintiff was bound by its decision. *Fullam* v. *Wright & Colton Wire Cloth Co.* 196 Mass. 474. *National Contracting Co.* v. *Commonwealth*, 183 Mass. 89, 95. *Stadhard* v. *Lee*, 32 L. J. (N. S.) 75, 78. *Roberts* v. *Bury Improvement Commissioners*, L. R. 5 C. P. 310, 318.

The master's finding, that by the exercise of due care the defendant could have completed the wrecking and removal of materials without expense to it, is equivalent to a finding that the defendant did not sustain any substantial loss by reason of the breach of the

contract by the plaintiff. In view of this finding, the defendant is entitled to recover only nominal damages. As the evidence is not reported, we cannot say that the master's finding in this respect is clearly wrong.

The two exceptions taken by the defendant to the refusal of the master to rule as requested upon the degree of care necessary to be exercised by it in wrecking the buildings after it had terminated the contract with the plaintiff, cannot be sustained. They could not have been given in the form presented, but were fully covered by the ruling made by the master upon the first of the defendant's requests for rulings.*

The only other question to be determined is whether the $1,500 deposited by the plaintiff is to be regarded as in the nature of a penalty or as liquidated damages. The first paragraph of the agreement recites "That the party of the first part [the defendant] receive a certified check for the sum of fifteen hundred dollars ($1,500) upon the signing of this agreement, which amount is to be forfeited in case the other conditions of the contract are not satisfactorily carried out by the party of the second part [the plaintiff]."

We are of opinion that this deposit was intended by the parties to secure the performance of the contract and was not to be retained by the defendant as liquidated damages for the breach of the contract by the plaintiff.

As only nominal damages assessed in the sum of $5 have been sustained by the defendant, the sum of $1,495 should be returned to the plaintiff, with interest in accordance with the decree.

The interlocutory and final decrees must be affirmed.

*Ordered accordingly.*

---

* The ruling referred to as made by the master was "that the degree of care required of the defendant in wrecking the buildings after November 9, 1911, was such care as men of ordinary prudence would have used under the same circumstances and having regard to the matter in which the defendant was engaged."