DAHLSTROM METALLIC DOOR COMPANY *vs.* EVATT CONSTRUCTION COMPANY.

EVATT CONSTRUCTION COMPANY *vs.* DAHLSTROM METALLIC DOOR COMPANY.

AMORY ELIOT & others, trustees, *vs.* DAHLSTROM METALLIC DOOR COMPANY & another.

Suffolk.   December 1, 2, 1925. — June 12, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Equity Jurisdiction,* Specific performance of building contract.   *Contract,* Construction, Performance and breach, Modification.   *Damages,* In suit in equity, Reasonable profit included as an element of damages, Counsel fees.   *Words,* "Changes."

Owners of land who have made a contract in writing for the construction of a building thereon cannot maintain a suit in equity to compel a subcontractor to perform his contract with the main contractor although

such contract provides that the subcontractor will "abide by and be subject to all of the terms, requirements, liabilities and conditions of the Principal Agreement entered into between the Contractor and the Owners," the owner having no contractual relationship with the subcontractor; nor have the owners a right to intervene in a suit between the main contractor and the subcontractor for that purpose.

The main contractor for the construction of a building made with a subcontractor a contract for the fabrication and installation of elevator enclosures and interior hollow metal doors called for in the specifications and addenda thereto, the erection of which the contractor had undertaken in its contract with the owner. The installation could be done either by carpenters or by iron workers. The subcontractor proposed to employ carpenters, which was less expensive. There was a controversy between the carpenters' union and the iron workers' union and a strike of iron workers on the building was threatened if carpenters were used. The fabrication had been completed, the work being specially adapted only to the building in question. The contractor, because of the threatened strike which would greatly delay performance of the contract, ordered the subcontractor to use iron workers for the work. In giving the order, the contractor acted under a provision of the contract numbered 13, which in substance provided that "in the performance of all work . . . the subcontractor will employ labor under conditions satisfactory to the contractor. The subcontractor agrees to discontinue the employment on this work of any of its employees who may be unsatisfactory to the contractor." The subcontractor refused and also refused to deliver the fabricated materials. The architect then, acting with the consent of the owners and under a provision empowering him "to make any changes in the work," issued an order directing the contractor to omit all labor for elevator doors and enclosures except so far as already furnished. By his contract the subcontractor agreed to "abide by and be subject to all of the terms, requirements, liabilities and conditions of the Principal Agreement entered into between the contractor and the owners." A suit and a cross suit in equity between the contractor and the subcontractor upon the contract resulted, and it was *held*, that

(1) The word "changes," in the provisions of the contract giving the architect power to make "changes in the work" with the approval of the owners, should be construed in its ordinary meaning, and therefore the order which the architect issued with the owners' consent required the contractor to omit the labor of installing elevator doors and fronts;

(2) Under provision 13 of the subcontract, the contractor had a right to demand a discontinuance of the employment of carpenters;

(3) Provision 13 of the subcontract was not inconsistent with, repugnant to, nor controlled by a seventh paragraph which entitled the contractor to provide labor or materials, should the subcontractor at any time refuse or neglect to supply a sufficient number of "properly skilled workmen";

(4) A finding that the contractor acted in good faith and reasonably was not erroneous in law and must stand;

(5) The subcontractor under his contract was bound by the change in the principal contract for the reason that he specifically agreed to be

bound by "the Principal Agreement," and was required to supply the material with a proper adjustment of the contract price; and, in view of the facts that the fabricated materials were specially designed, could not be obtained in the open market, and could not then be manufactured anew without serious delay, the contractor was entitled in equity to a decree requiring the subcontractor specifically to perform his agreement to deliver the chattels.

In the suit above described, it appeared that the breach of the subcontract by the subcontractor occurred on March 25, 1924, and that the order of the architect changing the contract was on April 10, 1924.    It was *held*, that, in awarding damages, the judge correctly ruled

(1) That the damages suffered by the contractor should be limited to such as arose before April 10; and to such as was caused in the completing after April 10 of fabricated material not furnished by the subcontractor on that date;

(2) That all items, relating to the cost to the contractor on and after April 10 of the installation of materials already furnished by the subcontractor but not installed before that date, should be excluded.

It also was *held*, in the suit above described, that no allowance should be made to the contractor for a premium paid by the owners on an indemnity bond given by the contractor to the subcontractor where there was no evidence that any demand had been made upon the contractor for payment of the premium and it did not appear that the contractor ever would be called upon to reimburse the owners for such payment.

In the circumstances above described, the contractor was entitled to recover as an element of damages a profit on labor furnished by it before April 10 in completing the work which the subcontractor wrongfully had refused to perform in accordance with its contract.

The contractor in the circumstances above described was not entitled to an allowance for counsel fees as an expense incurred by him by reason of the breach of the contract by the subcontractor.

BILL IN EQUITY, filed in the Superior Court on March 29, 1924, to enjoin the defendant, the main contractor (hereinafter called the contractor) in the construction of the "Boston Chamber of Commerce Building" for the trustees of the Boston Chamber of Commerce Realty Trust (hereinafter called the trustees), from using certain "hollow metal doors, trims, jambs, sills, bucks, and other material" which the plaintiff, as subcontractor, had specially manufactured and fabricated in accordance with plans and specifications of the architect for the purpose of complying with and fulfilling the provisions of its contract with the contractor, and from entering into any contract with any one else to install any such materials.    In this suit the contractor by leave of court filed a

CROSS BILL IN EQUITY on April 15, 1924, which was afterwards amended, for a decree restraining the subcontractor from interfering with possession by the contractor of the fabricated materials described in the main bill and directing the subcontractor to deliver such materials to the contractor; enjoining the subcontractor from defending an action of replevin of such materials brought · by the contractor and from proceeding with an action re-replevying them, brought by the subcontractor; enjoining the subcontractor from interfering in any way with the performance of the main contract, and for damages.   Also a

BILL IN EQUITY, filed in the Superior Court on May 15, 1924, and afterwards amended, by the trustees against the subcontractor seeking the same injunctive relief as that sought by the contractor in its cross bill.

In the main suit, the trustees were permitted on May 28, 1924, to file a petition to intervene to "obtain relief prayed for in the prayers of the cross bill."

All the matters above described were heard together by *Qua*, J.   On June 14, 1924, the judge ordered that there be entered a final decree dismissing the subcontractor's bill and a final decree dismissing the trustees' bill; that the trustees' petition to intervene be dismissed; and that, in the cross bill of the contractor, an interlocutory decree be entered in substance enjoining the subcontractor from interfering with possession by the contractor of the "material contracted to be delivered by the" subcontractor to the contractor through the replevin proceedings or otherwise, and from interfering in any way with the plaintiff in the performance of its contract for the erection of the Chamber of Commerce Building; such interlocutory decree further to order a reference of the cross suit to a master for hearing on the question of damages. On June 16, 1924, an interlocutory decree as ordered was entered, from which the subcontractor appealed.

The master found

(1) That while there was no express contract between the parties on the matter, it was the subcontractor's duty to unload and distribute through the building the fabricated materials which it was to furnish; that the contractor did

this and should be allowed, for its expense in so doing, the sum of $206.60;

(2) That the contractor should be allowed for certain wiring for electric drills and power furnished to one doing work for the subcontractor the sum of $50.15;

(3) That the contractor should be allowed for certain telephone and telegraph charges, incurred by it during the controversy, the sum of $24.72;

(4) That the contractor should be allowed for premiums upon bonds given by it in replevin suits which it instituted to get possession of the fabricated materials and for premiums on a bond which it gave by order of the court as a condition for the dissolution of an injunction *pendente lite*, which the subcontractor had procured upon the filing of its suit, the sum of $325;

(5) That the contractor should be allowed for teaming the fabricated materials after they were replevied the sum of $116.40;

(6) That the contractor should be allowed for materials purchased of Babcock-Davis Corporation to complete materials fabricated by the subcontractor but not finished on March 25 or before April 10, the sum of $1,170.77;

(7) That the contractor should be allowed for labor in erection of material before April 10, 1924, $888, of which $80.73 was profit; and for labor in erecting materials after April 10, $3,653.40;

(8) That the contractor should be allowed for certain miscellaneous items of expense incurred in the installation after April 10, the sum of $343.63;

The master made no finding or ruling upon (9) claims by the contractor for an allowance for the value of the services of its counsel rendered in this action and in the other actions that arose in connection with the controversy, stating that he was of the opinion that such matters involved a question of law and not a question of fact.

Other material facts found by the master are stated in the opinion.

Exceptions by both parties to the master's report were heard by *Weed*, J., who ruled as follows:

"In view of the findings and rulings of the court, filed June 14, 1924, it is my understanding that there was no breach of duty under the contract by the defendant prior to March 25, 1924, and that the contract between the parties was altered on April 10, 1924, by omitting therefrom the installation of the elevator doors and enclosures, so that the defendant should be required merely to furnish the material therefor, save so far as the material therefor had been already furnished and installed. Consequently, in dealing with the defendant's exceptions I have excluded all items of damage found by the master not occasioned by the refusal or neglect of the defendant to supply a sufficient number of properly skilled workmen satisfactory to the plaintiff, or sufficient material of the proper quality, or from its failure in any respect to prosecute the work with promptness and diligence, or to perform any of the agreements contained in said contract, prior to April 10, 1924, or thereafter, by the neglect or refusal of the defendant to supply the material not already furnished, covered by the contract. Specifically, I have excluded all items relating to the cost to the plaintiff on and after April 10, 1924, of the erection of materials already furnished by the defendant but not installed previous to that date.

"Of the items enumerated and considered in the master's report, the damages, amounting to $2,525.43, found and embodied in the final decree are made up as follows:— item 1, nothing; item 2, $15.90; item 3, $24.72; item 4, $325; item 5, $116.40; item 6, $1,170.77; item 7, $807.21; item 8, $65.43; item 9, nothing; total, $2,525.43."

A final decree accordingly was entered, making permanent the injunction issued in accordance with the interlocutory decree and directing the subcontractor to pay to the contractor as damages $2,721.16.

All parties appealed.

*R. H. Sherman & J. L. Hall,* (*M. Jenckes* with them,) for Dahlstrom Metallic Door Company.

*E. A. Whitman,* for Evatt Construction Company.

*G. R. Nutter,* (*J. J. Kaplan* with him,) for Trustees of Boston Chamber of Commerce Realty Trust.

CROSBY, J.    These are suits in equity arising out of an alleged breach of contract between the Dahlstrom Metallic Door Company and the Evatt Construction Company, the former hereinafter being referred to as the subcontractor, and the latter as the contractor.    The cases are before us on exceptions to the master's report and appeals from certain interlocutory and final decrees entered in the Superior Court.

In October, 1922, the trustees of the Boston Chamber of Commerce Realty Trust, entered into a contract with the contractor for the erection of the new Chamber of Commerce Building in Boston, which contained the following provision:

"ALTERATIONS, EXTRAS, AND DEDUCTIONS.

ALTERATIONS NOT INCREASING COST.

"The Architect may from time to time, by an instrument in writing signed by him and approved by the Owner in writing, order the Contractor to make any changes in the work; but shall otherwise have no power to make any change in this contract.    In case the changes thus ordered make the work less expensive to the Contractor, a proportional deduction shall be made from the contract price above specified; and, in case said changes make the work more expensive, a proportional addition shall be made to said contract price."

The contract between the owner and the contractor called for the installation of elevators essential to the use of the building.    The contractor entered into an agreement with the subcontractor for the fabrication and installation of elevator enclosures and interior hollow metal doors called for in the specifications and addenda thereto, the erection of which the contractor had undertaken in its contract with the owner.    The subcontractor agreed that it would "abide by and be subject to all of the terms, requirements, liabilities and conditions of the Principal Agreement entered into between the Contractor and the Owners and the General conditions of the specifications of the Architects, in so far as the same relate or may be applied to the work of the Sub-Contractor . . ."    The seventh paragraph of the subcontractor's contract provided as follows: "Should the Sub-Contractor at any time refuse or neglect to supply a sufficient number of properly skilled workmen, or sufficient

materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, the Contractor shall be at liberty to provide any such labor or materials, and to deduct the cost thereof from any money then due or hereafter to become due . . . " and the contractor was given the right to terminate the contract and "enter upon the premises and take possession for the purpose of completing the work . . . of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work and to provide the materials therefor. . . . " The thirteenth paragraph of the subcontract provided in part that "in the performance of all work . . . the Sub-Contractor will employ labor under conditions satisfactory to the Contractor. The Sub-Contractor agrees to discontinue the employment on this work of any of its employees who may be unsatisfactory to the Contractor." The sixteenth paragraph provided that as to certain differences between the parties they should be settled by arbitration. It was in evidence that the work which the subcontractor was called upon to perform could be done either by carpenters or iron workers, and that it could be done at less expense by the former. The subcontractor previously had employed carpenters in doing this class of work, but it appeared that at this time a controversy existed between the carpenters' union and the metal workers' union relating to work of this character. These suits arise by reason of that controversy.

On March 24, 1924, the contractor telephoned to the general manager of the subcontractor, instructing him to use iron workers in the erection of the elevator enclosures as the contractor, to protect itself, had promised that this work should be given to the iron workers; he insisted that in doing the work iron workers should be employed, but the subcontractor refused to accede to this request and insisted that carpenters should be so employed. In making this demand, the contractor relied upon the clause of the contract by which the subcontractor expressly agreed to discontinue the employment of labor unsatisfactory to the former. The trial judge found that the contractor, in demanding that iron

workers be employed, was entitled to compliance with his request in view of the terms of the contract if the contractor acted in good faith, which is expressly found.   The contractor is found to have been justified in fearing that if carpenters were employed the iron workers would hold up and delay other parts of the work.   The business agent of the iron workers' union threatened the contractor with a strike of all the iron workers on the building unless they were allowed to install the elevator fronts and doors.   The contractor notified the subcontractor that under the thirteenth paragraph of the contract it would expect the work to be done by iron workers.   On March 25, 1924, the subcontractor, disregarding the contractor's demand, appeared with carpenters to do the work; the contractor refused to permit them to proceed and they withdrew; whereupon the subcontractor refused to deliver the doors and other materials which had been specially fabricated for the building.   The contractor then replevined certain of the materials which were in Boston, and the subcontractor re-replevined them and then brought this bill to compel the contractor to allow the material to be installed by carpenters.   A cross bill was brought to enjoin further interference and to compel the subcontractor to deliver the balance of  the material.   The court dismissed the bill and ordered a decree to be entered for the contractor on the cross bill.

While these proceedings were pending, the owners, being apprehensive that the labor controversy, above referred to, would materially delay the construction of the building and involve it in great loss, at a meeting held on April 8, 1924, voted that the architect be instructed to notify the contractor that the agreement was altered by omitting therefrom the installation of elevator doors and enclosures, so that the subcontractor should be required merely to furnish the material therefor; and on the following day an order, referred to as "Order No. 81" was issued by the architects directing the contractor to omit all labor for elevator doors and enclosures except so far as already furnished.   This order is dated April 9, 1924, and was duly approved by the owners on April 10, 1924.   The trial judge found that the order was

issued in good faith and was intended to take from the general contractor the authority to install elevator enclosures and thereby prevent delay caused by the said labor controversy. The contractor immediately notified the subcontractor of the order and demanded delivery of all materials called for by its contract. As these materials were specially made for the Chamber of Commerce Building, they were of limited value or usefulness elsewhere. The power to change the contract did not give the owner the right to abrogate it, but the provision in question entitled the owner to make such reasonable changes as would render the work when completed satisfactory to it. *Gaffey* v. *United Shoe Machinery Co.* 202 Mass. 48, 53.

Neither the petition to intervene, filed by the trustees of the Boston Chamber of Commerce Realty Trust, nor the bill filed by them against the subcontractor seeking specific performance of its agreement with the contractor to furnish material can be maintained. The trustees had no contractual relation with the subcontractor. It is a general rule of law that one who is not a party to a contract cannot maintain a suit upon it. *Exchange Bank of St. Louis* v. *Rice,* 107 Mass. 37. *Marston* v. *Bigelow,* 150 Mass. 45, 53. *Nash* v. *Commonwealth,* 174 Mass. 335, 337.

The judge rightly ruled that the power of the architect, under Order No. 81, to make "changes in the work" with the approval of the owners, required the contractor to omit the labor of installing elevator doors and fronts. The word "changes" is to be construed in its ordinary meaning. To take away certain work from the contractor is a change or alteration of the work under the paragraph in question. The court also rightly ruled that the thirteenth paragraph of the subcontract gave to the contractor the right to demand a discontinuance of the employment of carpenters. In the situation which existed the contractor was entitled under the contract to determine whether the employment of carpenters was satisfactory to it. It was given power by the express terms of this paragraph to make that determination if, as the judge found, it acted in good faith and reasonably. The thirteenth paragraph is not inconsistent with,

repugnant to, or controlled by the seventh paragraph which entitled the contractor to provide labor or materials should the subcontractor at any time refuse or neglect to supply a sufficient number of "properly skilled workmen." The contract is to be so construed as to give full effect to each of its provisions if it is susceptible of such construction. *Ferguson* v. *Union Life Ins. Co.* 187 Mass. 8. *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336, 344. *Fleischman* v. *Furgueson,* 223 N. Y. 235. Williston on Contracts, § 611. It cannot be said that under paragraph seven if the subcontractor supplied properly skilled workmen he would have employed labor "under conditions satisfactory to the Contractor." The seventh and thirteenth paragraphs relate to entirely different matters. Under the latter the contractor reserved the right of determining what he would consider "unsatisfactory" labor and the conditions of labor. The seventh paragraph does not affect the right of the contractor to exercise the privilege expressly given him by paragraph thirteen to determine whether the subcontractor employs labor under conditions satisfactory to it. To hold otherwise would nullify the contractor's right of choice in the employment of labor.

The finding that the contractor acted in good faith and reasonably was not erroneous in law and must stand. *Dubinsky* v. *Wells Brothers Co. of New York,* 218 Mass. 232, 236, and cases cited.

The subcontractor under his contract was bound by the change in the principal contract for the reason that he specifically agreed to be bound by it, and was required to supply the material with a proper adjustment of the contract price. It is plain that on the finding by the judge the contractor under its cross bill is entitled to specific performance. The materials were designed and made for use in the Chamber of Commerce Building; they were limited in number and could not readily be used in any other building; they could not have been purchased in the open market. To have had them manufactured elsewhere would have caused serious delay in the construction of the building to the great damage of the contractor as well as of the owners. The contractor would

not have an adequate remedy at law. Equity will specifically enforce a contract relating to chattels, if the remedy at law for damages would be inadequate, and grant relief for delivery of a thing wrongfully withheld. *Gloucester Isinglass & Glue Co.* v. *Russia Cement Co.* 154 Mass. 92, 97, 99. *New England Trust Co.* v. *Abbott,* 162 Mass. 148, 154. *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 130.

After the cases had been heard by the trial judge, and he had filed findings and rulings and had ordered an interlocutory decree to be entered under which the cases were referred to a master to hear the parties and state the amount of damages sustained by the contractor by reason of the acts of the subcontractor, the master filed a report in which he found that the contractor was entitled to recover damages for certain items. Both parties filed exceptions to the report, all of which relate to questions of damage. The exceptions were heard by a judge of the Superior Court who modified the findings in certain respects and ordered a final decree to be entered accordingly.

The trial judge, in dealing with the exceptions relating to the master's findings, correctly ruled that, as it had been previously found there was no breach of the contract by the subcontractor before March 25, 1924, and, as the contract had been altered on April 10, 1924, by omitting therefrom the work of installing the electric doors and enclosures, the damages of the contractor were limited to such as arose before April 10 or thereafter by the refusal or neglect of the subcontractor to supply material covered by the contract and not already furnished. The judge specifically excluded all items relating to the cost to the contractor on and after April 10 of the installation of materials already furnished by the subcontractor but not installed before that date. Acting upon this view of the law, the court rightly ruled that nothing could be recovered as damages for unloading and handling certain material from November, 1923, to April 10, 1924, inclusive; and that the items of wiring for electric drills, erection of certain material of the plaintiff and material supplied by the Babcock-Davis Corporation, and certain miscellaneous items, should be reduced. The subcon-

tractor's exceptions 1, 2, 7, and 8, relate to these items and are overruled except so far as sustained. Its third, fourth, fifth and sixth exceptions relate respectively to amounts expended for telephone and telegraph charges, premiums paid on the replevin bonds, expense of moving materials in replevin suits, and cost of materials supplied by the Babcock-Davis Corporation. These charges were properly allowed by the court.

The third exception of the contractor, to the failure of the master to find that the amount paid as premium on an indemnity bond should be allowed, cannot be sustained. The bond was given by the contractor to the subcontractor, the premium thereon being paid by the owner, and bill therefor was sent by it to the subcontractor. The master found that there was no evidence that any demand had been made upon the contractor for payment of the premium. It does not appear that the contractor ever will be called upon to reimburse the owner for such payment. In these circumstances the contractor was not entitled to recover the amount of the premium. See *Kenyon* v. *Vogel*, 250 Mass. 341, 344.

The question whether the contractor is entitled to recover as an element of damages a profit on labor furnished by it in completing the work, which the subcontractor wrongfully refused to perform in accordance with its contract, is raised by the seventh exception to the master's report. The amount found due by the master included such profit, although it was disallowed by the court.

Where a contractor in violation of his contract has abandoned his work, the owner may complete it and charge the reasonable and necessary cost to the delinquent contractor. *Lawton* v. *Fitchburg Railroad*, 8 Cush. 230, 233. *Gleason* v. *Smith*, 9 Cush. 484, 486. *Hebb* v. *Welsh*, 185 Mass. 335, 337. *Pelatowski* v. *Black*, 213 Mass. 428, 431.

In the case at bar the contractor employed its own workmen to do this work. This necessitated withdrawing them from other work which they would have been able to perform and for which the contractor would have been entitled to a profit. In these circumstances it was entitled to a reasonable profit, in addition to the amount required to pay its work-

men as the reasonable and necessary cost of doing the work. To hold otherwise not only would the contractor be required to do the work at an actual loss, but the subcontractor would be required to pay for its default a less amount than if the contractor had employed others to complete the contract. Although there are no cases in this Commonwealth in which the precise point under discussion has been decided, we see no sound reason for holding that a reasonable profit may not be included as an element of damage. The contractor was bound by its contract with the owner to do this work, but it was not obliged to do it with its own men who might have been otherwise employed at a profit. In other words a reasonable profit, such as the contractor ordinarily would have been required to pay if it had employed others, was a necessary part of the reasonable expense incurred by reason of the default of the subcontractor. See *Newton* v. *Devlin,* 134 Mass. 490, 496. *Wagner* v. *Allen,* 174 Mass. 563, 564. *Weston* v. *Boston & Maine Railroad,* 190 Mass. 298, 299, 300. *Modern Steel Structural Co.* v. *Van Buren County,* 126 Iowa, 606, 615. *The Favorita,* 18 Wall. 598. *The Providence,* 98 Fed. Rep. 133. *Perkins* v. *Brown,* 132 Tenn. 294. *Cook* v. *Packard Motor Car Co.* 88 Conn. 590. See 39 Harv. Law Rev. 760, note. *The Astrakhan,* [1910] P. 172, 181. *Admiralty Commissioners* v. *Steamship Valeria,* [1922] 2 A. C. 242. *"Mediana"* v. *"Comet,"* [1900] A. C. 113. See *The Susquehanna,* 134 L. T. Rep. 45.

The contention of the contractor that it is entitled to be awarded counsel fees incurred cannot be sustained. It is a general rule that taxable costs recovered by the prevailing party are considered full compensation for the expense of conducting the litigation, even if such costs are in fact wholly inadequate. *Barnard* v. *Poor,* 21 Pick. 378. *Guild* v. *Guild,* 2 Met. 229. *Henry* v. *Davis,* 123 Mass. 345. Notwithstanding this general rule it has been held that there are certain exceptions. In *Westfield* v. *Mayo,* 122 Mass. 100, an action of tort to recover the amount of a judgment paid by the plaintiff to one who had sustained personal injuries on a highway which the plaintiff was bound to keep in repair, it was held that the defendant, having negligently created

the obstruction in the way, and having been notified to defend the action, was liable to the plaintiff for the amount of the judgment, and also for the reasonable expenses of the suit including counsel fees. It was there said, at page 105: " . . . as a general rule, when a party is called upon to defend a suit, founded upon a wrong, for which he is held responsible in law without misfeasance on his part, but because of the wrongful act of another, against whom he has a remedy over, counsel fees are the natural and reasonable necessary consequence of the wrongful act of the other, if he has notified the other to appear and defend the suit. When, however, the claim against him is upon his own contract, or for his own misfeasance, though he may have a remedy against another and the damages recoverable may be the same as the amount of the judgment recovered against himself, counsel fees paid in defence of the suit against himself are not recoverable." It has been held that in certain actions of tort the plaintiff can recover expenses incurred in employing counsel as an element of damages arising out of the wrongful conduct of the defendant. *Wheeler* v. *Hanson,* 161 Mass. 370. *Stern* v. *Knowlton,* 184 Mass. 29. *Stiles* v. *Municipal Council of Lowell,* 233 Mass. 174, 184. *Ashton* v. *Wolstenholme,* 243 Mass. 193. The case at bar, however, is not an exception to the general rule that counsel fees are not an expense that can properly be allowed. The cases last cited are distinguishable in their facts from those in the present case.

The subcontractor's ninth exception is based upon the failure of the master to report certain evidence in connection with its thirteenth exhibit and the contractor's ninth exhibit. As neither of these exhibits is before us, this exception must be overruled.

It results that the final decree is to be modified by adding to the amount that the Evatt Construction Company is entitled to recover, the amount found by the master to be due it for profit on the labor before April 10, 1924, as an expense of such work; as so modified the final decrees are to be affirmed.

*Ordered accordingly.*