HENRY SOUTHER & another, trustees, *vs.* CITY OF
GLOUCESTER.

Essex.   December 7, 1904. — March 4, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Tax.  Water Rates.  Municipal Corporations.  Practice, Civil,* Agreed statement
of facts.

In fixing the amount of water rates to be charged in a particular locality other things may be considered besides the amount of water used, and it may be reasonable and lawful to charge the inhabitants of an outlying section of a city as much for the water they use in only a part of the year as the inhabitants of the heart of the city are charged for the water used by them during the whole year.

The rule in regard to drawing no inferences on an agreed statement of facts unless the power to do so is given has no application to a statement of agreed facts submitted as evidence.

BILL IN EQUITY, filed August 21, 1903, to enjoin the defendant from cutting off the supply of water from a summer cottage of the plaintiffs at Bass Rocks in Gloucester.

At the hearing in the Superior Court before *Sheldon*, J., the plaintiffs introduced in evidence a "statement of agreed facts submitted as evidence." No evidence was introduced by the

defendant. It appeared that the defendant shut off the water from cottage B. mentioned in the opinion because the plaintiffs refused to pay the full water rates charged by the defendant on the ground that they were unreasonable and not uniform with the rates charged in other parts of the city. The plaintiffs had let cottage B. to one Mrs. Burke, of Omaha, Nebraska, for a term of two months beginning August 1, 1903, for the sum of $200 and the water rates, and the premises were occupied in accordance with that agreement. On or about August 15, 1903, the water commissioners caused notice to be given to Mrs. Burke that unless the bill sent to the plaintiffs on June 1, 1903, charging $25 for water for the cottage for the year or season ending June 1, 1904, was paid immediately, the water would be shut off. Because of this notice, the plaintiffs on August 20, 1903, made a formal verbal application for a supply of water for cottage B. and tendered the defendant the sum of $12.50, one half of the annual or season rate for the cottage, which the defendant refused to receive, and threatened to shut off the supply of water unless the full rate of $25 was paid. Whereupon the plaintiffs brought this suit in equity.

St. 1895, c. 451, was accepted by the city of Gloucester in 1895, and in the same year the city acquired under the provisions of that chapter the property of the Gloucester Water Supply Company, and has since been supplying itself and its inhabitants with water, there being no other aqueduct water supply in the city.

Cottage B. was situated at Bass Rocks. Before 1895 the plaintiffs became the owners of a large tract of seashore land in an outlying section of Gloucester at Bass Rocks, laid it out into building lots, constructed private ways through the tract and sold many lots, upon which houses for summer occupancy only were erected, and upon others of these lots the plaintiffs themselves erected summer houses, which they still own. At the time the defendant acquired the water works in 1895, a water main served a small portion at one corner of this tract and a very few summer houses thereon.

Since the regulations and rates for water supplied by the defendant were established, the defendant, at the plaintiffs' urgent request made with full knowledge of the regulations and

rates and without expressing any objection to them, at great expense owing to the rocky nature of the soil further extended its water mains or pipes at Bass Rocks and laid them in and under the private ways by license in writing from the plaintiffs, so as to supply with water nearly all the summer houses at Bass Rocks, including cottage B., thereby greatly benefiting the plaintiffs and their unsold land. These summer houses at Bass Rocks so supplied, ninety-two in all, were the only houses and consequently their owners or occupants were the only water takers there. But the laying of water pipes in some other sections of the city of Gloucester was also attended with great expense owing to the rocky nature of the soil.

The whole number of water takers in Gloucester is approximately fifty-five hundred. Included in this number are five hundred summer houses, situated for the most part in outlying sections of the city, which the defendant supplies with water each year at the rates and according to the regulations above mentioned. A majority of these houses are not occupied earlier than June 1 nor later than October 1, and some are not occupied for more than two or three months. The owners and occupants of one third of these summer houses are permanent residents of Gloucester, and the remaining two thirds are non-residents, many residing except in the summer months in distant States. To enable the defendant to supply water to an increasing number of applicants between the years 1900 and 1903 principally for summer houses, it was found necessary by the commissioners to construct during the year 1902 an additional reservoir at an expense of about $250,000.

The plaintiffs did not contend that the annual rates established by the commissioners for the use of water were unreasonable except as applied to summer houses and houses requiring a supply of water for a shorter term than one year, the income derived by the defendant from all water rates not being sufficient, within $35,000, to pay the current annual expenses of operating its water works and the interest on the water debt and the required annual payments on the principal of that debt.

The judge reported the case for determination by this court, such decree to be entered as on the facts law and justice required. The report contained the following statement by the

judge : " So far only as it was a question of fact I found as an inference from said statement of facts that the water rates and regulations, which are a part of said statement, are uniform and reasonable except so far as they are shown as a matter of law to be either unreasonable or not uniform with reference to the plaintiffs' property by the circumstances set out in the statement of agreed facts."

*D. C. Brewer*, for the plaintiffs.

*B. B. Jones & L. S. Simonds*, for the defendant.

LORING, J.   We do not stop to consider whether on the evidence before the Superior Court the plaintiffs were shown to have had any interest in the water rate for cottage B. for the year in question, for we are of opinion that the finding of fact on the merits was not wrong as matter of law.   As the bill must be dismissed, even if the preliminary difficulty which we have had is overcome, we prefer to dispose of the case on the ground on which it was tried and disposed of in the court below.

The plaintiffs have undertaken to sweep aside any difference in rates charged them by reason of facts peculiar to the section of the city where the cottage in question is situated, on the ground that the construction of water works is a public use to be paid for by taxation.   From this they draw the inference that all rates are to be based on the amount of water used in each instance and on nothing else.

But that is not so.   It was well said in *Ladd* v. *Boston*, 170 Mass. 332, 335 : " Considerable discretion in determining the methods of fixing rates is necessarily given by the statute to the water commissioner.   Money must be obtained from water takers to reimburse the city wholly or in part for the expense of furnishing water.   An equitable determination of the price to be paid for supplying water does not look alone to the quantity used by each water taker.   The nature of the use and the benefit obtained from it, the number of persons who want it for such a use, and the effect of a certain method of determining prices upon the revenues to be obtained by the city, and upon the interests of property holders, are all to be considered."   See in this connection *Smyth* v. *Ames*, 169 U. S. 466, 546, 547 ; *San Diego Land & Town Co.* v. *National City*, 174 U. S. 739, 757 ; *Cotting* v. *Kansas City Stock Yards Co.* 183 U. S. 79, 95, 96.

The special cost of extending the system to the "outlying section" in question, the fact that even if water is wanted there for less than a year as a rule, the interest on the cost of the necessary special construction and on the construction of the works as a whole runs throughout the year, and the fact, if it is a fact, that there are but few persons who take water in this section compared with the cost of extending the water system to it, are all of them matters which can be taken into account in fixing a reasonable rate. It is proper also to take into account the additional fact that " to enable the defendant to supply water to an increasing number of applicants therefor, between the years 1900 and 1903, principally for summer houses, it was deemed necessary by the commissioners to construct during the year 1902 an additional reservoir or water basin at an expense of about two hundred and fifty thousand dollars." There may be other matters which have not occurred to us.

It is true that the charge in question is not a charge for this district but for summer houses generally, and there are five hundred summer houses of which the plaintiffs own but ninety-two, that is to say, not quite one fifth. If the other four fifths are so situated that similar peculiar circumstances apply to them, no one could complain of this rate. The plaintiffs in any event cannot complain that some discrimination is made between them and water takers in the heart of the city, and they have gone no further than that in their proof in the case at bar. There is not enough here to enable us to say that, provided some discrimination can be made, the discrimination made is too great. The burden is on the plaintiffs to show that the rate in question is an unreasonable one, and they have not gone far enough to sustain the burden which rests on them.

The plaintiffs' objection that they are made to pay for a year in advance falls with their objection to paying as much for water in this " outlying section " for a part of the year as is paid by others for water for the whole year in the heart of the city. All rates are payable in advance.

The plaintiffs have relied on *Rockland Water Co.* v. *Adams*, 84 Maine, 472, referred to in *Turner* v. *Revere Water Co.* 171 Mass. 329, 335. It is enough to say of that decision, so far as the case now before us is concerned, that it did not appear that

there were any special circumstances in it. The only question before the court there seems to have been whether, other things being the same, as much could be charged for water for four months as for the whole year.

The plaintiffs' citation of *Norton* v. *Brookline,* 181 Mass. 360, makes it necessary to point out that this is not a case submitted on agreed facts, that is to say, is not a case stated but a case which was tried on a "statement of agreed facts submitted as evidence."

No error in law appearing in the finding of fact made by the Superior Court the entry must be

*Bill dismissed.*