ADOLPH A. BRAND & others *vs.* WATER COMMISSIONERS OF BILLERICA.

Suffolk.    February 13, 1922. — June 30, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Water Commissioners.  Billerica.  Municipal Corporations.*

A corporation owning a large tract of land in Billerica divided it into several hundred house lots, erected cottages thereon for summer residences, sold two hundred of them to various owners and each year rented three hundred to tenants for six months beginning April 15.  Previous to 1917, it supplied water to all houses on the tract from a system of its own.  This proving inadequate, it applied to the water commissioners of the town to extend the town mains to the tract. The commissioners consented to do this, provided the corporation would pay for

all water used by the occupiers of the cottages at the rate of thirty cents per thousand gallons. Accordingly the commissioners extended the mains, installed one meter and supplied water to this meter, from which point the water was distributed by the corporation through its own pipes to each of the five hundred houses upon the tract. All the water so furnished to the corporation had been charged to it at the rate of thirty cents per thousand gallons, regardless of the amount consumed; and the corporation in turn furnished this water to the occupiers of the five hundred cottages and charged therefor such rates as it and the occupiers mutually agreed upon. During the years 1918–1920, there passed through the corporation's meter from four and a half to over six and a half million gallons of water a year. The commissioners' rates established under St. 1897, c. 471, were from thirty-three and a third cents per thousand gallons for forty thousand gallons or less to eighteen cents per thousand for five hundred thousand gallons or more. The amount of water used by each of the summer cottagers probably would not exceed that used by the average occupier of a lot in the town who paid at the rate of thirty-three and a third cents per thousand. The only two consumers in the town, other than the petitioning corporation, using over five hundred thousand gallons used the water for commercial purposes. Upon a petition for a writ of mandamus commanding the commissioners to furnish water to the corporation at the rate called for by their schedule, it was *held,* that

(1) The commissioners under St. 1897, c. 471, had authority to fix rates, discrimination being permissible within reasonable limits except as between consumers who received the same service under similar conditions;

(2) It could not be said, in the circumstances above described, that the rate charged to the petitioner was unreasonable or unjustly discriminatory;

(3) The corporation not being an occupier of premises, the respondents were under no legal obligation to supply it with water apart from the existing contract voluntarily made by the parties.

(4) The petition was dismissed.

PETITION, filed in the Supreme Judicial Court on May 6, 1921, by three owners of summer cottages at Nuttings Lake Park in the town of Billerica and the Suburban Land Company, Inc., a corporation owning a large tract of land there with several hundred summer cottages on it, for a writ of mandamus commanding the water commissioners of the town of Billerica "to turn on and furnish water to said petitioner at the same rate that it furnishes water to other users of water of five hundred thousand gallons or over as is called for by their printed schedule, and to cease discriminating against said petitioners."

There was an agreed statement of facts. It appeared that the petitioner corporation used in 1918 four million, seven hundred thousand four hundred gallons of water; in 1919, five million, three hundred eighty-six thousand three hundred seventy-five gallons; and in 1920, six million four hundred ninety-three thou-

sand eight hundred seventy-five gallons.  Other material facts are described in the opinion.  The case was reserved by *Braley*, J., for determination by the full court upon the pleadings and the agreed statement of facts.

The case was submitted on briefs.

*A. G. McVey, J. R. McVey & J. W. Vaughan,* for the petitioners.

*F. S. Harvey,* for the respondents.

DE COURCY, J.  The individual petitioners make no claim to be furnished with water, but join on behalf of the Suburban Land Company Inc., which will be referred to herein as the petitioner. This corporation formerly was the sole owner of a tract of land in Billerica known as Nuttings Lake Park.  It divided the land into house lots, and erected cottages thereon for summer residences. About two hundred of these have been sold to various owners, and each year three hundred are rented to tenants for a season beginning April 15 and ending October 15.  Prior to July, 1917, the petitioner supplied with water all the houses on this tract, from a water system of its own.  This system became inadequate, and the company applied to the board of water commissioners of the town to extend the water mains to said tract.  The board consented to do this, provided the petitioner would pay for all water used by the occupiers of said premises at the rate of thirty cents per thousand gallons.  Accordingly they extended the mains, installed one meter, and since have supplied water to this meter: from which point the water is distributed by the land company through its own pipes to each of the five hundred houses upon said tract. All the water so furnished to the land company has been charged to it at the rate of thirty cents per thousand gallons, regardless of the amount consumed; and the company in turn furnishes this water to the occupiers of the five hundred cottages, and charges therefor such rates as it and said occupiers may mututally agree upon.

The board of water commissioners, under the authority of the statute empowering the town to supply its inhabitants with water (St. 1897, c. 471) have issued a schedule of regulations and water rates which provides that all consumers shall pay annually in advance one of the minimum rates covering a certain amount of water as specified therein.  The $6 rate allows eighteen thousand gallons consumption, and the $12 rate forty thousand gallons. All water used in excess of the quantity allowed under the minimum

rate must be paid for quarterly according to the following schedule of rates:

"Under  40,000 gal. per annum.                         .33⅓ per M gal.

40,000 gal. to 100,000 gal. per annum .30    per M gal.

100,000 gal. to 200,000 gal. per annum .25    per M gal.

200,000 gal. to 500,000 gal. per annum .20    per M gal.

Over  500,000 gal. per annum.                          .18    per M gal.

It is the contention of the petitioner, that the rate charged to it of thirty cents per thousand gallons is unjustly discriminatory. Before considering the legal principles involved, it is to be noted that three salient facts are established. The first is that the average occupier in the town, paying the annual $6 or $12 minimum rate, pays thirty-three and one third cents per thousand gallons. The amount of water used by the summer cottager probably would not exceed the allowance under these annual minimum rates. The second fact is that the Boston and Maine Railroad and Talbot Mills, which are the only other consumers of more than five hundred thousand gallons, and which pay therefor at the rate of eighteen cents, use the water for commercial purposes. The third is that the petitioner does not seek to have water furnished to it as an occupier of any building; but its sole purpose is to resell and distribute that water to the occupiers of the five hundred summer cottages. If the petitioner should receive the water at the eighteen cent rate, and resell it to the cottagers at that price, these cottagers would be supplied at a considerably smaller cost than the permanent inhabitants of the town; while if the petitioner should resell it at the average rate paid by such inhabitants, it would receive a large profit on the resale of the town water.

It is conceded that the town of Billerica through its water commissioners is engaged in a public calling. Originally it seems to have been the accepted doctrine that while a public service company must serve all at reasonable rates, there was no law against discrimination as such. *Fitchburg Railroad* v. *Gage*, 12 Gray, 393. *Parker* v. *Boston*, 1 Allen, 361. *Spofford* v. *Boston & Maine Railroad*, 128 Mass. 326. The modern tendency undoubtedly is to regard discrimination by such corporations as inconsistent with the duty owed to, and the corresponding legal

right in, the public. 2 Wyman on Public Service Corp. §§ 1290, 1300. *Weld* v. *Gas & Electric Light Commissioners*, 197 Mass. 556, 557. *Shaw Stocking Co.* v. *Lowell*, 199 Mass. 118, 121. But even at common law it is generally recognized that discrimination of rates is permissible, within reasonable limits, except as between consumers who receive the same service under similar conditions. This is especially true in cases of water, gas and like companies, where a different rate may be made per unit of service to large users, or to persons making different uses of the service, according to substantial authority. Indeed the petitioner's claim is based upon the assumption that different rates may reasonably be provided for large and small consumers of water. *Silkman* v. *Water Commissioners of Yonkers*, 152 N. Y. 327. *Metropolitan Electric Supply Co. Ltd.* v. *Ginder*, [1901] 2 Ch. 799. *St. Louis Brewing Association* v. *St. Louis*, 140 Mo. 419. *Boerth* v. *Detroit City Gas Co.* 152 Mich. 654.

The said act to supply the town of Billerica with water provides in § 1 that the town "may regulate the use of such water and fix and collect rates to be paid for the use of the same," and (§ 7) vests in a board of water commissioners all the authority granted to the town. In *Ladd* v. *Boston*, 170 Mass. 332, 335, where a similar statute authorizing the fixing of rates was involved, it was said by Knowlton, J.: "Considerable discretion in determining the methods of fixing rates is necessarily given by the statute to the water commissioner. Money must be obtained from water takers to reimburse the city wholly or in part for the expense of furnishing water. An equitable determination of the price to be paid for supplying water does not look alone to the quantity used by each water taker. The nature of the use and the benefit obtained from it, the number of persons who want it for such a use, and the effect of a certain method of determining prices upon the revenues to be obtained by the city, and upon the interests of property holders, are all to be considered. Under any general and uniform system other than measuring the water, some will pay more per gallon than others." In *Souther* v. *Gloucester*, 187 Mass. 552, a rate was sustained which charged the summer cottagers as much for the water they used, as the inhabitants in the heart of the city were charged for the water used by them during the whole year. It was said by Loring, J. (page 556): "The special cost of extend-

ing the system to the 'outlying section' in question, the fact that even if water is wanted there for less than a year as a rule, the interest on the cost of the necessary special construction and on the construction of the works as a whole runs throughout the year, and the fact, if it is a fact, that there are but few persons who take water in this section compared with the cost of extending the water system to it, are all of them matters which can be taken into account in fixing a reasonable rate." In view especially of these decisions we cannot say, on the facts disclosed, that the rate charged to the petitioner is unreasonable or unjustly discriminatory. See *Director General of Railroads* v. *Peoples Express, Inc.* 235 Mass. 199, 207.

An even more conclusive answer to the petitioner's claim is that the respondents were under no legal obligation to supply the land company, apart from the existing contract voluntarily made by the parties. By the general character of their customary undertaking the duty of service, and accordingly the duty of equal service if any, is owed by the respondents only to the occupiers of premises. The owner of property has no standing to complain of the refusal to supply his tenants; nor is he or the property responsible for their unpaid water bills, in the absence of special legislation. *Turner* v. *Revere Water Co.* 171 Mass. 329, and cases collected. *Young* v. *Boston*, 104 Mass. 95. *Berends* v. *Bellevue Water & Fuel Gaslight Co.* 119 Ky. 8. *Vanderberg* v. *Kansas City Missouri Gas Co.* 126 Mo. App. 600. *Brass* v. *Rathbone*, 153 N. Y. 435. *Thompson* v. *Goldsboro*, 151 N. C. 189. *United States* v. *American Water-Works Co.* 37 Fed. Rep. 747. In fact, as already pointed out, if the respondents should be compelled to furnish water to the petitioner, not as a consumer but as a dealer, at the rate of eighteen cents per thousand gallons, there would result an unjust discrimination against the inhabitants of the town, for whose benefit the system was installed.

The alleged vote at the town meeting of 1910, which is not set out in the record, and on which the petitioner bases an argument, does not appear to have any application where (as here) the sale of water to the applicant at the usual rates yields six per cent on the cost of the extension.

*Petition dismissed.*