WILLIAM G. MORGAN *vs.* TOWN OF BURLINGTON.

Middlesex.   May 2, 1944. — June 5, 1944.

Present: FIELD, C.J., QUA, RONAN, & WILKINS, JJ.

*Contract,* Building contract, Construction, Performance and breach.
   *Architect.   Agency,* What constitutes, Architect.

Under a contract in writing and plans and specifications for the con-
   struction of a high school building for a town calling for disposal of
   drainage by dry wells, with provisions that in the performance of the
   work the architect should be the representative of the town and that,
   if subsurface conditions different from those indicated in the plans
   and specifications should appear, he should make at once necessary
   changes in the plans and specifications with an adjustment of the
   contractor's compensation accordingly, the architect as to such changes
   was an agent of the town and it was responsible for unreasonable delay
   on his part in making them.
A town was bound to see that necessary plans were furnished seasonably
   to a building contractor with whom it had made a contract for the
   construction of a high school building, and was responsible for un-
   reasonable delay by the architect in making certain necessary changes
   in the plans where such delay was not caused by fault or neglect of
   the contractor.
A town had no right to a sum specified in a building contract as liqui-
   dated damages for failure of the contractor to complete the work at a
   certain date where his failure so to complete it was due to unreason-
   able delay on the part of the architect in making certain necessary
   changes in the plans and the town, not the contractor, was responsible
   for the architect's delay.
Under a separate article of a contract for the construction of a high
   school building for a town which provided that, if subsurface condi-
   tions different from those indicated by the plans and specifications
   should appear, the architect should make at once required changes
   in the plans and specifications with an adjustment of the contrac-
   tor's compensation "in the manner provided herein for adjustments
   as to extra and/or additional work and changes," the architect, al-
   though other provisions gave the town a general option to require
   the contractor to perform extras at fixed rates and gave the architect
   broad powers of interpretation of the contract, plans and specifica-
   tions and the power to "decide all . . . questions in connection with
   the work," was not empowered to change the contract or to let out to
   bids and award to another the work required by changes so made by
   him in the plans and specifications on account of subsurface conditions;
   the contractor was entitled to have that work and to be paid for it
   under the contract provisions.

CONTRACT. Writ in the Superior Court dated February 10, 1940.

The case was tried before *Greenhalge*, J.

*J. J. Moss*, for the defendant.

*A. E. Lewis*, (*W. M. Shaughnessy* with him,) for the plaintiff.

RONAN, J. This is an action of contract in which the plaintiff in the first count of his declaration seeks to recover the sum of $1,000 which the defendant claims to hold as liquidated damages, and, in the second count, damages which he alleges were caused by various breaches on the part of the defendant. The plaintiff had a verdict on both counts. The defendant excepted to the denial of its motions for directed verdicts, to the refusal of the judge to grant its requests, and to a portion of the charge.

There was evidence that the plaintiff entered into a written contract with the town by which he was to construct a high school building and complete the work in two hundred eighty-five days. He began work on October 12, 1938. The plans and specifications called for the disposal of drainage by a series of dry wells, but after the wells were dug it was discovered that such a system would not be practical on account of the nature of the soil, and the architect on October 28, 1938, ordered the plaintiff not to do any more work with reference to the drainage until a new system could be devised. Thereafter the architect drafted five different sets of plans for the new system, the final set being completed on March 1, 1939. There was evidence that two weeks would be a reasonable time for the preparation of a set of plans. The plaintiff's bid for the installation of the new system was rejected and the defendant on August 1, 1939, awarded this work to another contractor. On account of the location of the pipes in the building the plaintiff was delayed in the performance of his work by the delay in furnishing plans and completing the drainage work. He also claims damages on account of the failure of the town to give him the work of installing the revised system of drainage. There was evidence that the plaintiff, the architect and the building committee which represented the town considered

this work as an extra under the contract. This work was not given to the plaintiff because the building committee thought his bid was too high. The building committee refused to grant an extension of time to the plaintiff from July 23, 1939, the time fixed by the contract for the completion of the work, to September 1, 1939, and the town has retained $1,000 for delay during this period of forty days at the contract price of $25 per day. This committee, however, granted the plaintiff an extension of time from September 2, 1939, to September 29, 1939, when a controversy was pending between the committee and certain public works administration officials with reference to electrical equipment. The school was completed before the last mentioned date. The bill of exceptions states that the case was referred to an auditor who filed a report which was put in evidence. The report is not referred to in the bill of exceptions other than by stating certain findings made by the auditor, which in effect were that the architect in revising the plans for the new drainage system acted in good faith but with a complete disregard of the effect of the delay on the plaintiff; that the delay in the completion of the building was due primarily to the delay in determining the new drainage system; that inclement weather caused some delay which could have been lessened if the building had been "closed in" by the plaintiff; that the plaintiff's request for the forty-day extension should have been granted because the failure of the plaintiff to complete the building at the time fixed by the contract was not due to his fault or neglect; and that the work involved in the new drainage system should have been awarded to the plaintiff in accordance with the contract.

The contract defined "extra work" as work required by the town which in the judgment of the architect involved changes in or additions to the work required by the plans and specifications. The contract authorized the town to require the performance by the plaintiff of such extra work as the town might deem necessary, payment for which was to be computed in one of three ways mentioned. It contained a separate article which provided that, if the plain-

tiff encountered subsurface conditions different from those shown on the plans or indicated by the specifications, he should immediately notify the architect, who should promptly investigate the conditions and, if he found them to be different from those represented by the plans or specifications, should at once make such changes in the plans and specifications as were necessary, and that any increase or decrease of cost resulting from such changes was "to be adjusted in the manner provided herein for adjustments as to extra and/or additional work and changes." The contract provided for liquidated damages for each day the work remained uncompleted after July 23, 1939. It authorized the building committee to grant an extension of time for the completion of the work where the delay was not due to the fault or negligence of the plaintiff. It was expressly provided that the architect should represent the town in the performance of the work, all of which was to be performed under the direction and to the satisfaction of the architect. He was to determine the amount and suitability of all parts of the work, "interpret the plans, specifications, contract documents, and any extra work orders and . . . decide all other questions in connection with the work."

The defendant makes three contentions, to wit, the plaintiff was not entitled to secure the new drainage work; the architect was not the agent of the defendant and it was not liable for his unreasonable delay in drafting plans for the new drainage system; and the defendant had a right to withhold the $1,000 as liquidated damages for the plaintiff's delay in completing the work.

No question is raised but that the architect had the right to order the drainage work stopped when it was discovered that the nature of the soil would not make practicable the installation of the system originally contemplated. The installation of a system for the disposal of the drainage by dry wells in accordance with the plans and specifications could be found to indicate that the character of the subsoil was such as to permit the successful operation of such a system. When it was discovered that the subsoil would not permit the use of such a system, it became the duty of the

architect to devise a new system and to make "at once" the necessary "changes in the Plans and/or Specifications." It is conceded by the defendant that there was unreasonable delay in changing the plans but it contends that it was not liable for the delay because the architect was not the agent of the defendant. There are two answers to this contention. In the first place, the contract expressly provided that in the performance of the work the architect was to be the representative of the defendant. To that extent, at least, he was the agent of the defendant. *Leverone* v. *Arancio*, 179 Mass. 439. The change in plans was an essential part of the work that he was employed to do in behalf of the town, which had the right to insist upon the prompt performance of this work by him, and in the performance of this particular detail of the work he was not acting in any dual capacity, or as an arbiter or in behalf of the plaintiff. We think that in respect to this change in the plans the architect was the agent of the defendant, and that the latter was liable for his unreasonable delay. *Snead & Co. Iron Works* v. *Merchants Loan & Trust Co.* 225 Ill. 442. *Mayor & City Council of Baltimore* v. *Clark*, 128 Md. 291. *Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.* 199 N. Y. 479. *Mason Tire & Rubber Co.* v. *Cummins-Blair Co.* 116 Ohio St. 554. *Berry* v. *Huntington Masonic Temple Association*, 80 W. Va. 342. In the next place, and apart from the relation of the architect to the defendant, the defendant was bound either expressly or by necessary implication to see that necessary plans were seasonably furnished to the plaintiff, *Litchfield Construction Co.* v. *New York*, 244 N. Y. 251, and the failure for more than four months of the building committee, who could be found to be agents of the defendant, *G. M. Bryne Co.* v. *Barnstable*, 286 Mass. 544, to see that the plans for the drainage system were revised and copies furnished to the plaintiff could be found to be a breach of contract by the defendant. If, as the jury could warrantably find, the town breached the contract in this respect and the plaintiff was thereby interrupted and impeded in the progress of the work, the town would be liable for the additional expense incurred by him, *Ryan* v. *Boston*,

204 Mass. 456; *Daddario* v. *Pittsfield,* 301 Mass. 552, and cases collected in note 115 Am. L. R. 65; and the delay, not having been caused by the fault or neglect of the plaintiff, would not establish any right in the town to claim or withhold anything by way of liquidated damages. *Palmer* v. *Stockwell,* 9 Gray, 237. *Blanchard* v. *Blackstone,* 102 Mass. 343. *Gilbert & Barker Manuf. Co.* v. *Butler,* 146 Mass. 82. *Morrison* v. *Richardson,* 194 Mass. 370. *Wallis* v. *Wenham,* 204 Mass. 83. *Gray* v. *Currier,* 252 Mass. 78. *Eastern Massachusetts Street Railway* v. *Union Street Railway,* 269 Mass. 329. *Zarthar* v. *Saliba,* 282 Mass. 558. *State Street Trust Co.* v. *Hall,* 311 Mass. 299, 307. *Carrig* v. *Gilbert-Varker Corp.* 314 Mass. 351, 356. Williston, Contracts (Rev. ed.) § 1293A.

The remaining question is whether the plaintiff was entitled under the contract to secure the work of installing the new system. The defendant relies upon a provision of the contract which applies generally to extra work and which gives the defendant the option of requiring the plaintiff to perform such work at the rates fixed by this provision for such work. There would be strength in this contention if this provision stood alone. *Gilbert Blasting & Dredging Co. (Limited)* v. *Rex,* 7 Exch. Can. 221. But it does not stand alone. It must be construed with the other provisions of the contract, giving each its appropriate force and effect and construing all the provisions as harmonious and consistent portions of a single contract which the parties adopted as the means of accomplishing their purpose. *Bray* v. *Hickman,* 263 Mass. 409. *Cohen* v. *Bailly,* 266 Mass. 39. *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367. *Radio Corp. of America* v. *Raytheon Manuf. Co.* 300 Mass. 113. *Waldo Bros. Co.* v. *Platt Contracting Co. Inc.* 305 Mass. 349.

It is to be noted that the provision of the contract dealing with a situation where a change in the plans and work should become necessary on account of the nature of the subsoil is a provision separate and apart from the other provisions of the contract and that it completely and effectually covers the single subject matter with which it deals.

It must be assumed that the parties intended that this paragraph should govern their rights if the contingency against which it provided should arise. If it did occur, as in fact it did, then the plaintiff was entitled to have the work required by the change and to be paid therefor in accordance with the methods designated in the provision dealing generally with extras. *Ferguson* v. *Union Mutual Life Ins. Co.* 187 Mass. 8. *Malden Knitting Mills* v. *United States Rubber Co.* 301 Mass. 229. *J. F. Fitzgerald Construction Co.* v. *Southbridge Water Supply Co.* 304 Mass. 130.

The new work became included in the work to be performed by the plaintiff when a change in the plans and work became necessary on October 28, 1938, upon discovery that the nature of the subsoil required a revision in the drainage system. The defendant contends that there was error in the refusal to grant its fourth request that "In deciding to let the new drainage system out as an extra on bids, the architect acted as a quasi-arbitrator and his decision is binding on the owner and the contractor unless it can be shown that the architect acted in bad faith." The architect could act only with reference to matters entrusted to him and in the manner designated by the contract. *Derby Desk Co.* v. *Conners Brothers Construction Co.* 204 Mass. 461. *Morgan* v. *Murdough,* 216 Mass. 502. The architect alone had no authority to make any changes in the work as did the architect or engineer in *Gaffey* v. *United Shoe Machinery Co.* 202 Mass. 48, *Dahlstrom Metallic Door Co.* v. *Evatt Construction Co.* 256 Mass. 404, and *Bay State Dredging & Contracting Co.* v. *South Essex Sewerage District,* 279 Mass. 158, except in the single instance where the nature of the soil necessitated a change in the plans and specifications, and in that respect he had authority only to make the necessary changes and to adjust the difference resulting in the contractor's compensation in the manner provided for in the paragraph dealing in general with extras. It is true that the decision of one authorized to determine questions relating to the carrying out of a building or construction contract, whose decision the parties have agreed shall be final and binding upon them, must stand except in cases

of fraud, or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment. *Chapman* v. *Lowell*, 4 Cush. 378. *Palmer* v. *Clark*, 106 Mass. 373. *Flint* v. *Gibson*, 106 Mass. 391. *Norcross* v. *Wyman*, 187 Mass. 25. *White* v. *Abbott*, 188 Mass. 99. *Hathaway* v. *Stone*, 215 Mass. 212. *Hennebique Construction Co.* v. *Boston Cold Storage & Terminal Co.* 230 Mass. 456. Here the architect was empowered to interpret the plans, specifications and contract. *Norcross* v. *Wyman*, 187 Mass. 25. *Handy* v. *Bliss*, 204 Mass. 513. *Marsch* v. *Southern New England Railroad*, 230 Mass. 483. Although his power was broad, it was not without rational limits. There is nothing in the contract that authorized him to increase or diminish the work which the plaintiff had undertaken to perform with the single exception already noted. The defendant was already bound to have the work arising from the change in the sewerage system performed by the plaintiff. Nowhere in the contract is there any provision authorizing the architect to take this work from the plaintiff and to award it on bids to another person. The power to interpret the contract did not give him the power to make a new contract for the parties or to eliminate or abrogate any of its terms. He could translate the contract and ascertain its meaning but he could not add to or detract from the text. There is no provision in the contract dealing with letting a part of the work out on bids, and consequently there was nothing in this respect calling for any interpretation of the contract. The architect was acting entirely outside the contract and beyond his jurisdiction in deciding to let the new work out on bids. His decision was a nullity. There was no error in the denial of the fourth request. *Derby Desk Co.* v. *Conners Brothers Construction Co.* 204 Mass. 461, 467–468. *Morgan* v. *Murdough*, 216 Mass. 502, 505. *J. F. Fitzgerald Construction Co.* v. *Southbridge Water Supply Co.* 304 Mass. 130, 134. *Snead & Co. Iron Works* v. *Merchants Loan & Trust Co.* 225 Ill. 442. *Williams* v. *Chicago, Santa Fe & California Railway*, 112 Mo. 463. *Mallard, Stacy & Co.* v. *Moody & Brewster*, 105 Ga. 400. *Burke* v. *Mayor, Aldermen & Commonalty of New York*,

7 App. Div. (N. Y.) 128. *Molloy* v. *Briarcliff Manor,* 145 App. Div. (N. Y.) 483. *Merrill-Ruckgaber Co.* v. *New York,* 160 App. Div. (N. Y.) 513.

In view of what has been said there is no need to discuss the other exceptions of the defendant. All of them have been considered and in none of them do we perceive any error.

*Exceptions overruled.*