Fremont-Smith, J.
The plaintiff, Massachusetts Municipal Wholesale Electric Company (“MMWEC”), brings this action against the defendants, the City of Springfield (the “City”) and its Board of Water Commissioners (the “Board”), seeking damages for past overcharges in contravention of an agreement entered into by the parties for the sale of water and an injunction requiring the defendants to abide by the terms of the agreement. The parties have filed cross-motions for summary judgment.
BACKGROUND
Created by St. 1975, c. 775, MMWEC is a public corporation and political subdivision of the Commonwealth of Massachusetts which plans, finances, and acquires electric power on behalf of its member cities and towns. MMWEC operates an electric generating facility in Ludlow known as the Stony Brook Energy Center (“Stony Brook”) which supplies electricity, under power sales agreements, to Massachusetts cities and towns with municipal light departments. The Board operates a municipal waterworks which supplies water to residential, commercial and industrial users in Springfield and several surrounding towns, including Ludlow.[1] Defendants have operated the municipal water supply system in Springfield and Ludlow as a single integrated system for over 100 years, setting rates and operating and maintaining the water distribution system. See St. 1,889, c. 368.
It is further undisputed that MMWEC and the defendants entered into an agreement, effective January 1, 1981, for the sale of water to MMWEC at Stony Brook for a period of twenty years (the “Agreement”). Under the Agreement, MMWEC is to make payments, pursuant to Appendix A of the Agreement (“Appendix A”), for water provided by the City. The Agreement further provides that the rates set forth in Appendix A may be amended by a vote of the Board “(t]o reflect general increases in the City’s cost, but in no event shall such rates in any one year be greater that the rates shown on Appendix A as amended for that year. ” See Agreement Paragraph 3.
For the first eight years that the Agreement was in place, the City charged, and MMWEC paid, for water at the rates set forth in Appendix A. During that time, it is undisputed that MMWEC was billed $0.50 per 100 cubic feet (“CCF”) of water for the first 5,000 CCF, $0.44 per CCF for the next 55,000 CCF, and $0.22 for each additional CCF. Since January 1, 1989, water rates have been amended by vote of the Board on five separate occasions, as follows:
On January 1, 1989, the City increased water rates for the first time in eleven years, billing MMWEC $0.75 for the first 5,000 CCF, $0.66 for the next 55,000 CCF, and $0.33 for each additional CCF over 60,000 CCF. Shortly thereafter, on July 1, 1989, the City began charging MMWEC $1.09 for the first 20,000 CCF and $.33 for each additional CCF. Almost two years later, on April 1, 1991, the Board instituted a $0.36 rate for industrial customers in the City of Springfield, while MMWEC’s industrial customer rate remained unchanged at $1.09 for the first 20,000 CCF, and $0.33 for each additional CCF.[2] Later in 1991, the Board again raised rates, charging residential and commercial users in the City of Springfield $1.09 per CCF, industrial users in Springfield $0.36 per CCF, and all users in Ludlow $1.09 per CCF. Finally, on January 1, 1992, the Board decreased the rates charged to residential and commercial users in Springfield and all users in Ludlow, including MMWEC, to $0.99 per CCF. Water rates for industrial users in the City of Springfield remained at $0.36 per CCF.
Thus, the cumulative rate increase charged to MMWEC between 1989 and 1992 was more than 350%, whereas it is undisputed that the City’s actual costs from the water system increased only about 28%, from 1988 to 1992, as follows:
Fiscal Year End City Water Costs
June 30, 1988 $8.7 Million
June 30, 1989 $10.7 Million
June 30, 1990 $9.4 Million
June 30, 1991 $11.8 Million
June 30, 1992 $11.2 Million
DISCUSSION
“The interpretation of a written contract ... is a question of law, not of fact” and is proper for summary judgment. Lumber Mutual Ins. Co. v. Zoltek Corp., 419 *585 Mass. 704, 707 (1995); see also Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992). A written contract is to be construed according to the usual and ordinary meaning of its words. Ober v. National Casualty Co., 318 Mass. 27, 30 (1945); Edwin R. Sage Co. v. Foley, 12 Mass.App.Ct. 20, 28 (1981); Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992). The court should grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving parly to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56.
While admitting that the rate increases have greatly exceeded the actual increase in their direct and indirect water costs for 1988 — 1992, defendants point to the City of Springfield Financial Management Structure Reorganization, Acts of 1989, Chapter 656, §11 (approved January 8, 1990), which provides, in pertinent part:
Notwithstanding the provisions of any general or special law to the contrary, the water commission shall establish rates for water which shall include, at least, an amount adequate to cover: (i) an appropriate rate for the sale of water as determined by the water commission in its sole discretion; plus: (ii) any current and past operating deficits; (iii) establishment of a sufficient capital and operating reserve fund; and (iv) reimbursement of the city’s general fund for all direct and indirect administrative costs incurred by the city relative to the water department.
The defendants contend that, in addition to the actual increased costs they incurred, they were entitled to raise rates in view of their assumption, in the 1989— 1992 period, of a $4.2 Million liability for the “Water Reserve Loan 1971,” and a $3.95 Million liability for the “Ludlow Filter Plant 1989.” The amount of any increased costs resulting from the assumption of such liabilities, however, is nowhere set forth in the record, and such costs have been, in any event, already accounted for in the costs listed at p. 4 above — see Twining and Lyons affidavits, discussed infra.
And, while it is true that the Agreement and Chapter 656 clearly authorize the City to charge water users for the funding of a “sufficient capital and operating reserve fund” for the water system, there is no evidence that any such reserve fund has actually been established or funded which would justify any of the rate increases.
Indeed, while defendants make general allegations that additional cash reserves are required for various contemplated capital improvement projects and to comply with a Consent Order of the Massachusetts Department of Environmental Protection, the record is devoid of any indication that defendants have yet to actually commence any such projects, that any such projects have ever been funded, or even that any such projects are planned to be commenced at any definite date in the near future.[3] To the contrary, both Mr. Twining, Senior Accountant at the Water Department, and Mr. Lyons, Manager of the Water Department, testified in their depositions that the cost comparison figures set forth at p. 4 above already account for all city expenditures for the water system, including capital outlays and debt service.
In short, the Court will interpret the Agreement’s requirement that the rates authorized in Appendix A not be increased except to reflect increased cost, in the ordinary meaning of the Agreement’s words, to mean actual incurred cost, rather than to mean speculative future costs which might result from speculative future capital improvements. The undisputed facts indicate that defendants have breached, and are continuing to breach, the Agreement by raising rates in excess of the amounts specified in Appendix A to the Agreement, as adjusted by any increased cost incurred by the defendants.[4]
Plaintiffs also contend that, by having charged different rates to plaintiff from those charged to industrial users in Springfield, defendants have unlawfully discriminated against them, citing Chapter 368 of the Acts of 1889, which provides: “the City shall furnish to residents of said town [of Ludlow] . . . the same privileges and facilities in and for the use of its water that are furnished to the residents of said city of Springfield, so long as it can do so without injury to said city.” Moreover, public franchises or utilities have a duty to the communities they serve to exercise their franchises for the “benefit of the public, with a reasonable regard for the rights of individuals who desire to be served, and without discrimination between them.” Weld v. Gas & Electric Light Commissioners, 197 Mass. 556, 557 (1908).
While reasonable classification between customers based upon higher usage or method of metering may justify a separate rate, Flately v. City of Malden, 40 Mass.App.Ct. 38, 40 (1996), it is illegal for a corporation to discriminate between similarly situated “consumers who receive the same service under similar conditions.” Brand v. Board of Water Commissioners of the Town of Billerica, 242 Mass. 223, 226-27 (1922). Where, as here, defendants’ own report admits that the cost of supplying water to individual users, whether located in Springfield or Ludlow, is $0.36 CCF,[5] and there is no factual basis asserted for any claim of injury,[6] the Court concludes, on the undisputed facts, that, in addition to breaching the Agreement, defendants have illegally discriminated against the plaintiff under common law and under Chapter 368 of the Acts of 1889, by charging the plaintiff, an industrial user in Ludlow, a higher rate than that charged to industrial users in Springfield (see pp. 3-4, supra).
*586 ORDER
Accordingly, for the foregoing reasons, MMWEC’s motion for summary judgment is ALLOWED and the defendants motion is DENIED. A judgment shall enter prohibiting the City of Springfield and the Board of Water Commissioners from charging disparate industrial rates to industrial customers in Springfield and Ludlow and from increasing rates charged to the plaintiff except as provided by Appendix A to the Agreement, as increased to reflect the increased costs specified at p. 4., supra, and as such may, in the future, be further increased by defendants’ actually-incurred additional costs of the operation and maintenance of the water system. It is further ORDERED that, according to the unrebutted calculations in the affidavit of Roy submitted by the plaintiff, judgment shall enter for the plaintiff Massachusetts Municipal Wholesale Electric Company against the City of Springfield and the Springfield Water and Sewer Commission, in the sum of $797, 976.84, plus interest and costs.

In early 1996, the City of Springfield established, in accordance with M.G.L.c. 40N, the Springfield Water and Sewer Commission (the “Commission"). The Commission is an independent body and is not subject to the authority of the city council or mayor. Pursuant to M.G.L.c. 40N, §6, all assets, liabilities and obligations of the Springfield Water Department have been assumed by the Commission. In addition, the Commission assumed all contracts (including the MMWEC Agreement) previously entered into by the City Water Department and is obligated by and responsible for the performance of each such contract according to its terms. Pursuant to M.G.L.c. 40N, the Commission has full authority to operate and maintain the waterworks system, including establishing rates, making capital improvements, and issuing bonds for the financing of the Commission’s operations. Prior to July 1, 1996, the Board had only the ability to set water rates and make supervisory decisions concerning the waterworks, and the ability, with the approval of the city council and mayor, to bond for capital expenditures and outlays.

On January 14, 1992, MMWEC appeared before the Board and applied for the $0.36 industrial rate, but was denied on the ground that the $0.36 rate was available only to industrial customers located in Springfield but not in Ludlow.

One of these contemplated future projects, for instance, is a project to renovate the Ludlow Reservoir, the use of which has been discontinued for over two years.

Although the Court need not address, in view of this decision, the plaintiffs contention that the Agreement allows for rate changes only once in a given year, the Court notes that the Agreement specified only that the rates cannot exceed the rates set forth in Appendix X as amended for that year.

As noted, Springfield industrial users are charged $0.36 CCF, whereas MMWEC is charged $0.99 CCF.

Defendants only claimed “motivation in charging a higher rate for industrial use to outside [of Springfield] industrial users was to keep Springfield attractive to new and existing businesses” (defendants’ memorandum in support of their motion).